John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412 Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | ) ) ) ) | Civil Action No. CV-20-31-BU-BMM-JTJ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| LEANNE MARTEN, in her official capacity as Regional Forester of Region One of the U.S. Forest Service; MARY ERICKSON, in her official capacity as Forest Supervisor of the Custer Gallatin National Forest; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

1

# INTRODUCTION

1. Climate change is the most existential threat facing humanity.

2. This case challenges the Forest Service's failure to supplement its National Environmental Policy Act ("NEPA") analysis for the 1987 Custer Gallatin National Forest Plan in light of new information and changed circumstances regarding climate change and forest management in the Wildland Urban Interface ("WUI").

3. Plaintiff Cottonwood Environmental Law Center ("Cottonwood") also challenges the approval of the Bozeman Municipal Watershed and North Bridger Forest Health Projects under the 1987 Forest Plan without first supplementing the NEPA analysis.

4. The 1987 Forest Plan is in the process of being revised to address climate change.

5. According to the Purpose and Need for the Revised 1987 Forest Plan, "[d]irection guided by new information and science is needed to address impacts reasonably expected to occur as a result of climate change." FEIS Ch. 1 p. 5.

6. In 2017, researchers from universities across the western United States, including Montana State University, determined that "roughly 1% of US Forest Service treatments experience wildfire each year, on average . . . suggesting that most treatments have little influence on wildfire." Tania Schoennagel, *Adapt to*

*More Wildfire in Western North American Forests as Climate Changes*, PROCEEDINGS OF NATIONAL ACADEMY OF SCIENCES, April 17, 2017, 114 (18) 4582, 4586.

7. The Forest Service cited the 2017 National Acadedy of Sciences ("NAS") article in the Final EIS for the Revised 1987 Forest Plan, stating, "[policies that foster adaptive resilience in the wildland-urban interface are needed. (Schoennagel et al. 2017)." FEIS Ch. 1 p. 295.

8. According to the 2017 NAS article, "[h]ome loss to wildfire is a local event, dependent on structural fuels (e.g., building material) and nearby vegetative fuels." Schoennagel, *Adapt to More Wildfire in Western North American Forests as Climate Changes*, 4582 at 4587.

9. To support this statement, the article cites to a scientific paper published in the *Journal of Forestry* by Jack Cohen, a scientist for the U.S. Forest Service's Rocky Mountain Research Station in Missoula, Montana. *Cohen JD* (2000) *Preventing disaster: Home ignitability in the wildland-urban interface,* J FOR 98(3):15–21.

10. According to the Forest Service study, "[t]he key to reducing W-UI fire losses is to reduce home ignitability. . . The home and its surrounding 40 meters determine home ignitability. . ." *Cohen JD* (2000) *Preventing disaster: Home ignitability in the wildland-urban interface,* J FOR 98(3):15, 20.

11. The Forest Service did not consider or analyze these concepts when it prepared the 1987 Forest Plan, but it did discuss them in the Final Environmental

Impact Statement for the Revised 1987 Forest Plan, which has still not been finalized with a Record of Decision.

12. The Forest Service's failure to determine whether the 2017 NAS article is significant new information that triggered the need to prepare supplemental NEPA for the 1987 Forest Plan is a violation of NEPA.

13. The Forest Service's failure to prepare supplemental NEPA is arbitrary and capricious in light of the fact that the agency stated the 1987 Forest Plan was being revised to include management direction that considers climate change and the Environmental Impact Statement for the revised Forest Plan cites the 2017 NAS study.

14. The Forest Service's approval of the BMW and North Bridger Forest Health Projects under the 1987 Forest Plan without first supplementing the NEPA analysis is a violation of NEPA.

15. Even if a site-specific EIS is completed, "[e]ffects may occur and/or continue without appropriate management direction at broad scales.'" *Salix v. U.S. Forest Serv.,* 944 F. Supp. 2d 984, 991 (D. Mont. 2013) (aff'd by *Cottonwood Envt'l Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075 (9th Cir. 2015).

16. On June 9, 2020, Cottonwood sent Defendant Forest Supervisor Mary Erickson a letter asking the Forest Service to supplement the NEPA analysis for the BMW project because of new information and changed circumstances.

17. Defendant Forest Supervisor Mary Erickson states in the BMW Record of Decision that her "decision to implement Alternative 6 represents a balance between the purpose of the project, an evaluation of short term and long term risks, and resources to be protected." ROD p. 23.

18. According to the EIS, "[t]he issue is the long term tradeoff of risking severe wildfire and associated <u>high sediment increase</u> risk compared to the activities of this proposal." Ch. 3-31 (emphasis added).

19. The Record of Decision states, "[t]he Bozeman Municipal Watershed project is designed to strategically modify vegetative fuel conditions using thinning and prescribed fire to lower the risk of severe, extensive wildfires in the Bozeman Municipal Watershed, thereby reducing the risk of excess sediment and ash reaching the municipal water treatment plant." (5).

20. Cottonwood secured an internal email from the Forest Service's hydrologist via a Freedom of Information Act request that states the analysis in the EIS is "probably an over estimation of potential sediment reduction since the wildfires would burn outside of BMW treatment boundaries and not all areas within treatment areas would be subjected to wildfire."

21. The Forest Service's internal email states the "[b]ottom line is that the BMW project, if fully implemented, could result in a <u>modest</u> reduction in sediment yields. . ."

22. Cottonwood sent a letter to Supervisor Erickson asking the Forest Service to supplement the BMW analysis to account for the fact that the analysis overestimated the amount of sediment that would be reduced by logging in the area.

23. Cottonwood also asked the Forest Service to supplement the NEPA analysis for the BMW project to account for a changed circumstance—the City of Bozeman specifically upgraded its water treatment plant to address large fires and sediment. "The plant was designed with a forest fire in mind and the potential constituents of the runoff." (Miller Email).

24. The EIS never discloses how much sediment the upgraded water treatment plant can handle.

25. The EIS for the BMW project does not analyze whether the upgraded treatment plant can handle the "modest" sediment increase that could enter the watershed if the area is not logged.

26. The public had no way to meaningfully comment on whether the BMW project, which overestimated sediment reductions, was necessary to protect the city's water supply, given the City of Bozeman has upgraded its water and sewer treatment plant.

27. The Forest Service violated NEPA by failing to prepare supplemental NEPA analysis.

28. The Bozeman Municipal Watershed project, which was approved under the 1987 Custer Gallatin Forest Plan, should be enjoined until the Forest Service completes supplemental NEPA analysis.

## JURISDICTION

29. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §2201 (Declaratory Judgment Act), 28 U.S.C. §361(mandamus), 5 U.S.C. §§ 701-706, et. seq (Administrative Procedure Act), and the National Environmental Policy Act (NEPA) 42 U.S.C. § 4321 et seq.

30. The federal government has waived sovereign immunity and the court has jurisdiction to hear this action pursuant to 5 U.S.C. § 701-706.

31. An actual controversy exists between Plaintiffs and Defendants. Plaintiffs' members use and enjoy the Gallatin National Forest, including the Project areas, for hiking, fishing, hunting, camping, photography, horseback riding and engaging in other vocational, scientific, spiritual, and recreational activities.

32. Plaintiffs' members, including Glenn Monahan, Nancy Schultz, Christina Deweese, Nancy Ostlie, Phil Knight, Clint Nagel, George Wuerthner, Peter Harned, Joanna Vollrath, and Steve Catir intend to continue to use and enjoy the Project areas frequently and on an ongoing basis in the future.

33. Logging the BMW and North Bridger Forest Health Projects will cause irreparable harm to Cottonwood members' aesthetic, recreational, scientific, spiritual, conservation, and educational interests. These are actual and concrete

7

injuries caused by Defendants' failure to comply with mandatory duties under NEPA and the APA. The requested relief would redress these injuries and this Court has the authority to grant Plaintiffs' requested relief.

## VENUE

34. Venue is proper in the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1391(e). Plaintiffs are located in Bozeman and within the Butte Division of the United States District Court for the District of Montana. Defendant Erickson is the Forest Supervisor of the Custer Gallatin National Forest. Her office is located within the Butte Division of the United States District Court for the District of Montana. Venue is also proper under Rule 3.2 of the Local Rules of Procedure of the United States District Court for the District of Montana.

## PARTIES

35. Plaintiff Cottonwood Environmental Law Center is a conservation organization and group of free-thinking rabble-rousers dedicated to protecting the people, forests, water and wildlife in the West. Cottonwood is based in Bozeman, Montana. Cottonwood members have visited the Project areas for years and have aesthetic, recreational, spiritual, scientific, and conservation interests in the Custer Gallatin National Forest, including the Bozeman Municipal Watershed Project area and North Bridger Forest Health Project

area. Cottonwood members have suffered and will continue to experience concrete injuries to their aesthetic, conservation, scientific, spiritual, and recreational values because the Defendants have not supplemented the NEPA analysis for the Custer Gallatin National Forest Plan, Bozeman Municipal Watershed Project, and North Bridger Forest Health Project or determined whether supplemental NEPA analysis is necessary in light of significant new information or circumstances.

36. Defendant Leanne Marten is the Regional Forester of Region One of the U.S. Forest Service. Defendant Marten is being sued in her official capacity.

37. Defendant Mary Erickson is the Forest Supervisor of the Custer Gallatin National Forest. Defendant Erickson is being sued in her official capacity.

38. Defendant United States Forest Service ("Forest Service") is an administrative agency within the United States Department of Agriculture, entrusted with the management of our National Forests.

## STATUTORY BACKGROUND

39. NEPA is the "basic national charter for the protection of the environment." 40 C.F.R. §1500.1(a).

40. NEPA procedures must ensure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. 40 C.F.R. §1500.1(b).

41. NEPA requires agencies to supplement "either draft or final environmental impact statements if [t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9.

## PROCEDURAL BACKGROUND

42. The Record of Decision for the Gallatin National Forest Plan was signed by Northern Region Regional Forester James C. Overbay on September 23, 1987. Leanne Marten is the current Northern Region Regional Forester.

43. The Forest Service issued a ROD for the Custer Gallatin Forest Plan on September 23, 1987, issued a ROD for the BMW Project on November 29, 2011, and issued a Decision Memo for the North Bridger Forest Health Project on August 27, 2018.

44. The BMW Project implemented a "site specific Forest Plan Amendment for visual quality." (ROD page 7).

45. Forest Supervisor Mary Erickson approved the BMW Project on November 29, 2011.

46. Forest Supervisor Mary Erickson approved the North Bridger Forest Health Project on August 27, 2018.

47. This court enjoined the BMW Project on June 25, 2013 and the injunction was lifted on April 20, 2020. *All. for Wild Rockies & Native Ecosystems Council v. Marten*, CV 12-55-DLC, 2020 WL 1915128 (D. Mont. Apr. 20, 2020).

48. Alliance for the Wild Rockies challenged the North Bridger timber sale on June 3, 2019. The District Court for the District of Montana denied Alliance's motion to enjoin the North Bridger Forest Health Project on June 3, 2020. *All. for the Wild Rockies v. Marten*, CV 19-102-M-DWM, 2020 WL 2949866 (D. Mont. June 3, 2020).

49. Cottonwood sent a letter to the Forest Service on June 9, 2020, requesting that the agency supplement its NEPA analysis for the BMW Project. On June 17, 2020, the Forest Service responded that it would not supplement NEPA analysis for the BMW Project.

## CLAIM FOR RELIEF

**The Forest Service violated NEPA by failing to prepare supplemental NEPA analysis for the 1987 Forest Plan, the BMW project, and North Bridger Forest Health project.**

50. Plaintiff incorporates all prior paragraphs.

51. The Forest Service violated NEPA by failing to prepare supplemental NEPA analysis for the 1987 Custer Gallatin National Forest Plan in light of new science regarding climate change and the Wildland Urban Interface.

52. The Forest Service violated NEPA by approving the North Bridger Forest Health and Bozeman Municipal Watershed Projects under the 1987 Forest Plan, which does not address new information or changed circumstances, including climate change and the Wildland Urban Interface.

53. The Forest Service violated NEPA by failing to supplement the analysis for the BMW project in light of new information and changed circumstances, which would have disclosed to the public the amount of sediment the new treatment plant can handle, and allowed the public to comment on whether the timber sale is necessary given the original analysis overestimated the amount of sediment that would be reduced with the project.

## REQUESTS FOR RELIEF

For all the above-stated reasons, Plaintiff respectfully requests that this Court:

A. Declare that the Forest Service violated the law;

B. Enjoin implementation of the Projects;

C. Order the Forest Service to prepare supplemental NEPA for the 1987 Forest Plan, BMW and North Bridger Forest Health projects.

C. Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees under the EAJA; and

D. Grant Plaintiff such further relief as may be just, proper, and equitable.

Respectfully submitted this 21st Day of July, 2020.

/s/ John Meyer
JOHN MEYER

*Attorney for Plaintiff*

12