IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | 2:20-cv-00031-BU-BMM |
| Plaintiff, | |
| vs. | **ORDER** |
| LEANNE MARTEN, et al., | |
| Defendants. | |

**INTRODUCTION**

Cottonwood Environmental Law Center ("Cottonwood") brought this action against Leanne Marten in her official capacity as Regional Forester of Region One of the U.S. Forest Service ("USFS"), Mary Erickson in her official capacity as Forest Supervisor of the Custer Gallatin National Forest, and USFS. (collectively, "Federal Defendants"). Cottonwood alleges that USFS violated the National Environmental Policy Act ("NEPA") when it failed to supplement the environmental impact statement ("EIS") for the forest plan for the Custer Gallatin National Forest originally adopted in 1987 ("1987 Forest Plan") and for three projects approved under that same plan. (Doc. 3). Cottonwood argues that new

information has come to light that would require a supplemental EIS for the forest plan and all three projects. *Id.*

Cottonwood filed a Motion for Temporary Restraining Order and Preliminary Injunction on September 11, 2020. (Doc. 6). The motion targeted two of the three projects in the original lawsuit. *Id.* Federal Defendants filed a Motion to Dismiss for Failure to State a Claim on October 2, 2020. (Doc. 14). The Court held a hearing on both motions on November 30, 2020. (Doc. 21).

## BACKGROUND

### *Statutory Background*

The National Forest Management Act of 1976 ("NFMA") charges USFS with administering our national forests. 16 U.S.C. § 1600. NFMA contains procedural and substantive requirements for the management of national forests, including that USFS "provide for multiple use and sustained yield of the products and services obtained" from the national forests and "provide for diversity of plant and animal communities . . . in order to meet overall multiple-use objectives." *Id.* § 1604(e)(1), (g)(3)(B). USFS forest management practices must also comply with other federal environmental laws, such as NEPA, the Endangered Species Act, the Clean Water Act, and the Clean Air Act.

USFS implements its many forest management requirements through the preparation of Land Resource Management Plans (generally called "forest plans")

that guide management activities for each national forest. 16 U.S.C. § 1604(f)(1).

The forest plan sets high-level, forest-wide goals for USFS management activities.

The forest plan does not provide site-specific direction such as where to put a trail

or what timber to harvest. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726,

729 (1998) (describing forest plans as general planning tools that establish the

overall management direction for a forest). USFS proposes and implements

individual projects to build roads, establish trails, or designate cuts that must align

with the forest plan in order to achieve such site-specific objectives.

NEPA requires federal agencies to analyze the potential environmental

effects of major federal actions. *See Vt. Yankee Nuclear Power Corp. v. Nat. Res.

Def. Council*, 435 U.S. 519, 558 (1978). NEPA also requires federal agencies to

disseminate widely their findings on the environmental impacts of their actions.

*See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

NEPA remains a procedural statute, focused on ensuring informed decision-

making rather than compelling particular results or imposing substantive

obligations on agencies. *See id.* ("Although [NEPA] procedures are almost certain

to affect the agency's substantive decision, it is now well settled that NEPA itself

does not mandate particular results, but simply prescribes the necessary process.").

NEPA operates through the requirement that a federal agency must prepare

an environmental impact statement (EIS) as part of any "major Federal actions

significantly affecting the quality of the human environment." 42 U.S.C. §

4332(2)(C). The initial EIS usually proves sufficient, but if the major federal action

is ongoing, an agency must supplement that initial NEPA analysis when new

significant information arises relating to environmental concerns not considered in

the original EIS. *See Norton v. S. Utah Wilderness All. ("SUWA")*, 542 U.S. 55, 72

(2004); 40 C.F.R. § 1502.9. NEPA requires supplemental analysis only if "there

remains 'major Federal actio[n]' to occur." *SUWA*, 542 U.S. at 73 (citing *Marsh v.*

*Oregon Natural Resources Council*, 490 U.S. 360, 374 (1989)). USFS approval of

a forest plan or project each constitute major federal actions that require NEPA

analysis. *Cf. Native Ecosystems Council v. Krueger*, 946 F.Supp.2d 1060 (D. Mont.

2013) (analyzing NEPA analysis prepared for an approved forest plan and project).

Some activities are exempt from NEPA review through so-called categorical

exclusion ("CE"). The Healthy Forests Restoration Act ("HFRA") statutorily

exempts from NEPA projects within designated areas that are designed to "reduce

the risk or extent of, or increase the resilience to, insect or disease infestation" and

that meet other specified criteria. 16 U.S.C. §§ 6591b(a)(1), 6591a(d). If a project

satisfies HFRA's requirements, it may proceed under the statutory CE without

further NEPA review. *See Native Ecosystems Council v. Erickson*, 330 F. Supp. 3d

1218, 1245 (D. Mont. 2018), *aff'd* 804 F. App'x 651; *Native Ecosystem Council v.*

*Marten*, 2018 WL 6046472, at *8 (D. Mont. Nov. 19, 2018).

*Factual Background*

The Custer Gallatin National Forest encompasses more than three million acres of ecologically diverse landscapes. It includes dense forests, alpine lakes, the tallest peak in Montana, and flat-topped buttes that rise from prairie grassland. USFS adopted the Custer Gallatin National Forest Plan in 1987 ("1987 Forest Plan") along with an accompanying EIS. *See* USFS, Record of Decision for Land and Resource Management Plan and Environmental Impact Statement for the Custer National Forest and National Grasslands (June 1987). USFS began the process of revising the 1987 Forest Plan in January 2016 in part to account for new research on climate change. This revision includes new NEPA analysis for the revised plan that considers climate change impacts. The revision process remains currently underway. The 1987 Forest Plan governs USFS management of the Custer Gallatin National Forest until that revision concludes.

This case centers on the 1987 Forest Plan and three projects approved under that plan: the Bozeman Municipal Watershed ("BMW") Project, the North Hebgen Project, and the North Bridgers Project. USFS approved the BMW Project on November 29, 2011, when it issued a Supplemental Final EIS ("BMW Project SEIS"). (Doc. 7-14). USFS approved the North Hebgen project on June 29, 2017, when it completed an Environmental Assessment ("EA") and issued a Finding of No Significant Impact ("FONSI") on the environment that required no further

NEPA analysis. (Docs. 7-5, 7-6). USFS approved the North Bridgers Project under HFRA's statutory CE for insect and disease infestation. (Doc. 14-2); *All. for the Wild Rockies v. Marten*, 464 F.Supp.3d 1169, 1175 (D. Mont. 2020) (rejecting a NEPA challenge to the North Bridgers Project because USFS approved the project under HFRA's statutory CE).

## ANALYSIS

## I.   Motion to Dismiss

A court must dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, the complaint must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). A plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft* 556 U.S. at 678. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court also may consider documents "whose contents are alleged in complaint and whose authenticity no party questions, but which are not physically attached to the pleading" when analyzing the adequacy of a complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

### a.  First Claim for Relief

Cottonwood first claims that USFS violated NEPA by failing to prepare supplemental NEPA analysis for the 1987 Forest Plan. (Doc. 3 at 10). Cottonwood argues that either new climate change research or the decision to revise the 1987 Forest Plan itself would constitute new information that would trigger supplemental NEPA analysis. *Id.*

Cottonwood's first claim fails to present a plausible claim for relief. Forest plans are general land management planning mechanisms that only require NEPA analysis when adopted or amended. NEPA's supplement mandate applies only to ongoing "major Federal actions" where "there remains 'major Federal actio[n]' to occur." *SUWA*, 542 U.S. at 73 (citing *Marsh*, 490 U.S. at 374). An ongoing major federal action requires specific actions that an agency will take. *See id.* The approval of a land use plan, such as a forest plan, represents a major federal action requiring an EIS. *See* 43 C.F.R. § 1601.0-6 (2017). The federal action at issue would be completed when the USFS approved the plan. No ongoing major federal action exists that could require supplementation of the 1987 Forest Plan based on new information relating to climate change or forest plan revisions. *Cf. SUWA*, 542 U.S. at 73 (rejecting plaintiff's claim to supplement an agency's land use plan).

Cottonwood justifies its argument that the plan revision announcement requires supplementation of the original 1987 Forest Plan EIS based, in part, on

language in *SUWA* that indicates that "additional NEPA analysis" is required when a land management plan is revised. *Id.* Cottonwood argues for an interpretation of *SUWA* that would require an agency to supplement the original land management plan environmental review while also preparing an environmental review for the revised plan. Cottonwood cites no additional legal basis for this assertion and cannot provide an example of another case that supports its interpretation of *SUWA*. The Court declines to create such a duplicative requirement for land management agencies. The "additional NEPA analysis" contemplated in *SUWA* refers to analysis in support of an amendment or revision to the forest plan. *See id.* (citing U.S. Bureau of Land Management regulations that require analysis in support of a land use plan amendment or revision, not supplementation to the original plan analysis). Should Cottonwood seek to challenge the NEPA analysis conducted on the revised forest plan for an alleged failure to analyze climate change or any other environmental issue adequately, it remains welcome to do so upon USFS adoption of that plan in a separate action.

**b. Second Claim**

Cottonwood next claims that USFS violated NEPA by failing to prepare supplemental NEPA analysis for the BMW Project, the North Bridger Project, and the North Hebgen Project. (Doc. 3 at 11). Cottonwood argues that the USFS decision to revise the 1987 Forest Plan to address climate change represents "new

information" that triggered the need to prepare supplemental NEPA analysis all three projects. *See id*.

Cottonwood's second claim fails to present a plausible claim for relief for North Bridger Project. The HFRA's statutory CE exempts the North Bridger Project from NEPA analysis. *See All. for the Wild Rockies*, 464 F.Supp.3d at 1175. Cottonwood fails to provide a plausible claim for relief that would prevent dismissal relating to the North Bridger Project on that basis alone.

Cottonwood's second claim also fails to present a plausible claim for relief for the other two projects. Cottonwood fails to provide facts or case law that would support a claim that an announced forest plan revision by itself constitutes new information that affects the environment and triggers supplementation of the original forest plan EIS. The new designation of an endangered or sensitive species provides a common example of new information that *would* trigger supplemental NEPA analysis. *See, e.g.*, *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 558 (9th Cir. 2000). Such designations indicate changes in the ecological status of a project area and provide biological information that may alter agency analysis of a project and its impacts. The announcement of forest plan revisions does not similarly provide "new information" that would "affect the quality of the human environment in a significant manner." *Marsh*, 490 U.S. at 374 (quoting 42 U.S.C. §

4332(C)). Based on the record, Cottonwood fails to indicate new information that would require supplemental NEPA analysis.

### c. Third Claim

Cottonwood third claims that USFS violated NEPA by failing to prepare supplemental NEPA analysis for the BMW Project. (Doc. 3 at 12). Cottonwood alleges that the City of Bozeman's installation of an upgraded water treatment plant and USFS internal estimates of sediment reduction constitute new information that would require supplemental NEPA analysis for the project. *Id*.

Cottonwood's third claim fails to present a plausible claim for relief. The BMW Project SEIS already addressed the alleged new information according to the record before the Court. Cottonwood points to an internal email obtained through a Freedom of Information Act request in which USFS employees discussed sedimentation analysis that the project would result in "modest reduction in sediment yields." (Doc. 3 at 4–6). The BMW Project SEIS includes analysis that the "BMW Project, if fully implemented, could result in a modest reduction in sediment yields . . . ." (Doc. 7-14 at 184). The BMW Project SEIS analysis appears nearly identical to the email provided by Cottonwood. Cottonwood further points to the fact that the City of Bozeman upgraded its water treatment plant after the adoption of the BMW Project SEIS. *Id.* The BMW Project SEIS incorporates the City of Bozeman's "extensive analysis of potential water treatment upgrade

alternatives." (Doc. 7-14 at 158). Based on the record, Cottonwood fails to allege how these already considered factors would constitute new information requiring further analysis under NEPA.

### d. Fourth Claim

Cottonwood finally claims that USFS violated NEPA by failing to prepare supplemental NEPA analysis for the BMW Project and North Bridger Project "in light of new information and changed circumstances regarding the marking of trees in the project areas after the projects were approved." (Doc. 3 at 13).

As described above, the North Bridger Project stands exempt from further NEPA analysis under HFRA's statutory CE. *See All. for the Wild Rockies*, 464 F.Supp.3d at 1175. Cottonwood fails to provide a plausible claim for relief relating to the North Bridger Project that would prevent dismissal with regard to that project on the basis of HFRA alone.

Cottonwood further fails to allege facts that show the marking of trees constitutes new information requiring supplemental NEPA analysis of the BMW Project. Cottonwood cites no legal basis for its assertion that the alleged marking of trees is new information rather than information contemplated as a normal part of project execution. Cottonwood further fails to show how alleged new tree marking constitutes "new information" that would "affect the quality of the human environment in a significant manner." *Marsh*, 490 U.S. at 374 (quoting 42 U.S.C. §

11

4332(C)). Cottonwood's allegations are "mere conclusory statements" that cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Based on the record, Cottonwood fails to provide new information that would require supplemental NEPA analysis of the BMW Project.

## II.   Motion for Temporary Restraining Order and Preliminary Injunction

A court may grant a preliminary injunction or temporary restraining order to preserve the status quo pending final determination of an action. *See Textile Unlimited, Inc. v. A. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001). The issuance of a preliminary injunction or temporary restraining order represent extraordinary remedies, that should not be awarded as a matter of right, but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008).

A plaintiff who seeks a preliminary injunction or temporary restraining order must establish four elements: 1) that it likely will succeed on the merits; 2) that it likely will to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that an injunction will serve the public interest. *See id.* at 20.

Cottonwood fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Cottonwood fails to show that it will likely succeed on the merits as required for a preliminary injunction or temporary restraining order. The Court

will therefore deny Cottonwood's motion for preliminary injunction or temporary restraining order.

## ORDER

Accordingly, **IT IS ORDERED** that:

- Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 6) is **DENIED**; and

- Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**.

Dated the 17th day of December, 2020.

_____

Brian Morris, Chief District Judge
United States District Court

13